CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 15 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| VIRGINIA BROADBAND, LLC, ) | |
| ) | |
| Appellant, ) | Civil Action No. 3:14-CV-00052 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WARREN MANUEL, ) | By: Hon. Glen E. Conrad |
| ) | Chief United States District Judge |
| Appellee. ) | |

In this appeal from the United States Bankruptcy Court for the Western District of Virginia, Appellant Virginia Broadband, LLC ("VABB" or "the Company"), a Chapter 11 debtor, seeks review of the bankruptcy court's memorandum opinion and order allowing three claims filed by Appellee Warren Manuel, VABB's former CEO and board member, and denying VABB's request for recharacterization or, in the alternative, equitable subordination of those claims. For the following reasons, the court will affirm the bankruptcy court's decision in full.

## Background

### I. *History of the Company*

In 2003, Robert Sullivan and Hunter Chapman formed VABB, a manager-managed Virginia limited liability company that provides wireless internet services in and around Culpeper and Rappahannock counties and along Virginia's Northern Neck. In late 2004, Manuel joined the Company's board of managers. Sullivan, Chapman, and Manuel each made capital contributions and served on the Company's board in its early years. Manuel also worked as VABB's Chief Executive Officer ("CEO") during two periods – from 2004 until October 2010 and again from February 2011 until August 2012. Manuel was also VABB's largest shareholder, owning 28.994% equity in the Company.

VABB's history is fraught with tension and financial trouble. In 2006, Chapman and Manuel made loans to VABB; Middleburg Bank also loaned money to the Company, guaranteed by Chapman and Manuel. Thereafter, Sullivan reduced his membership interest in the Company from 26% to 10%, resulting in his removal from the board.[1] From 2007 to 2011, membership on the board varied. During this period, the Company obtained loans from Manuel, Chapman, Mark Davis, the Huggins Family Trust, Tom Huggins, and EVB Bank. VABB issued notes for each loan, and all of these loans, save EVB's, were unsecured. The Company also sought a loan from the U.S. Department of Agriculture Rural Development for Rural Utility Services (RUS), as well as a separate loan to pay for audit services. RUS declined VABB's application, citing an inability to determine the financial feasibility of the project due to the Company's failure to provide audited financial statements. In October 2010, the board voted to remove Manuel as CEO. In February 2011, however, Manuel was restored to the board and reappointed CEO. VABB subsequently borrowed additional money from Tom Huggins; it also refinanced the EVB loan, resulting in issuance of a new note.

In January 2012, the board discussed approval of a note to Manuel in the amount of $1,194,649.00 for unpaid salary, bonuses, and expenses; however, the board did not approve the note that Manuel presented at that meeting. In February 2012, the board approved the minutes of the January meeting, which had authorized formalizing the indebtedness to Manuel. That month, Larry Chang, chairman of the board at that time, issued a note to Manuel. In April 2012, the board reviewed the February note payable to Manuel and decided to make no changes to the note. In August 2012, the board removed Manuel from the board and as CEO. Thereafter, Sullivan was reappointed to the board.

---

[1] Sullivan filed suit against VABB in March 2007. The parties agreed that Sullivan would be paid $525,000, with $100,000 payable immediately and the remaining balance paid over the following seven years pursuant to a note. In July 2010, Sullivan sought judgment under this note. This dispute was settled by a new agreement, made in November 2011, which provided that Sullivan would be paid $5,000 monthly, plus a $10,000 penalty.

## II. History of the Bankruptcy

In November 2012, VABB filed its Chapter 11 petition in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division. It filed a proposed Chapter 11 plan, under which unsecured creditors holding claims up to $50,000 are to be paid cash equal to 5% of the allowed amount of those claims within twelve months of the distribution date. Unsecured creditors over $50,000 will receive an equity membership in the new, reorganized entity in proportion to the amount of their claim. Under this treatment, many of the former managers will participate in management of the new entity, as they are unsecured creditors. VABB has predicted, however, that it "cannot survive as an operating company if [] Manuel is involved in the management." Docket No. 2, Ex. 8. In March 2014, VABB filed its Second Amended Plan of Reorganization under Chapter 11 in which Class 8 claims consisted of all claims of Manuel. The plan stated that Manuel "shall receive no payment on his claims or equity in exchange for his claims." Docket No. 2, Ex. 9. Manuel objected to this treatment and, in June 2014, VABB filed objections to Manuel's three proofs of claim.

Manuel's three proofs of claims were as follows:

Claim 24, for $516,645.44, was based on a number of promissory notes pursuant to which Manuel loaned money to VABB. Manuel attached 11 promissory notes to this claim, along with resolutions from the VABB board authorizing each loan. VABB objected, asserting that this claim should be subordinated to the claims of other unsecured creditors, because Manuel controlled VABB at the time the notes were to have been paid and solely maintained the records regarding sums due under the notes.

Claim 25, for $1,248,830.00, was based on the February 2012 promissory note signed by Larry Chang, purportedly for "money loaned" by Manuel. Docket No. 2, Ex. 57. Manuel also provided a copy of the January 2012 board meeting minutes reflecting that the board resolved to

3

formalize "agreements for the loans granted to the company by…Manuel in the amount of $1,194,649.00," as well as an itemization for the claim (principal plus interest from the note's maturity date). Docket No. 2, Ex. 58. VABB objected to this claim, asserting that the claim was based on a note issued when the company's operations "were not sustainable." Docket No. 2, Ex. 23. VABB also asserted that the basis for the note was not a loan, but was "deferred salary, bonuses, and other amounts." Id. VABB claimed that these sums were not authorized by the full board, and that Manuel "cannot show that the note that is the basis of [Claim 25] was inherently fair or entered into in good faith." Id.

Claim 26, originally for $83,818.87, was based on "business expenses [incurred] for the debtor," and is evidenced by several pages of expense report ledgers containing handwritten notations editing the figures contained therein. Docket No. 2, Ex. 59. VABB objected to this claim, noting that Manuel solely maintained the records and lacked "proper and complete documentation" for these supposed loans to VABB. Docket No. 2, Ex. 24. VABB also argued that portions of the claim were barred by the statute of limitations. After VABB filed its objection, Manuel amended his claim twice. First he reduced the claim to $49,118.16. Then, he increased the claim by $48,668.31, bringing the total to $97,806.47. The increase purportedly pertained to unpaid salary accrued when VABB placed stop payment orders on several outstanding salary checks to Manuel. VABB objected to the increase, arguing that the claim was untimely to the extent that it added claims unrelated to the original claim, and was amended after the bar date for filing proofs of claim.

VABB's disclosure statement further objected to Manuel's treatment as an unsecured creditor. VABB argued that all of Manuel's claims should be equitably subordinated to the claims of other unsecured creditors, because Manuel caused "wide ranging damage" to VABB, including (1) his failure to pay personal property taxes for four years; (2) his payment of health insurance

for a former VABB employee for five years after that employee left the company, costing $60,000; (3) his failure to provide sufficient information to permit auditing of VABB's books and records; (4) his execution of a lease without the board's approval; (5) his authorization of $120,000 in bonus payments to himself without the board's approval; (6) his authorization of a salary for himself "far in excess" of the amount justifiable by the company's financial condition; and (7) his acceptance of the February 2012 note signed by Chung without the full board's approval. Docket No. 2, Ex. 8. VABB contends that all these actions constituted a breach of Manuel's fiduciary duty to the company. Alternatively, VABB suggests that the bankruptcy court should have recharacterized Manuel's claims as equity in the company.

The bankruptcy court heard evidence on these issues. Thereafter, on November 5, 2014, the bankruptcy court issued an opinion in which the court overruled VABB's objections with respect to Claim 24 and Claim 25, overruled in part and sustained in part VABB's objections to Claim 26, and rejected VABB's arguments for equitable subordination and recharacterization of Manuel's claims. See Bankr. Docket No. 593. VABB timely appealed the bankruptcy court's decision regarding the allowance of Claims 25 and 26, and its decision to not subordinate or recharacterize all three claims. VABB did not appeal the bankruptcy court's decision regarding the allowance of Claim 24. Furthermore, Manuel did not appeal the bankruptcy court's ruling that the $48,688.31 increase for Claim 26 was time barred. The matter has been briefed and the court heard argument on June 24, 2015. The matter is now ripe for review.

## **Standard of Review**

The court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). The district court reviews the bankruptcy court's findings of fact for clear error. In re Merry–Go–Round Enterprises, 180 F.3d 149, 154 (4th Cir. 1999); Bankruptcy Rule 8013. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence

5

is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). If "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Id. at 574 (citing United States v. Yellow Cab Co., 338 U.S. 33, 342 (1949)). "Due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Farouki v. Emirates Bank Int'l Ltd., 14 F.3d 244, 250 (4th Cir. 1994). The party seeking reversal of the bankruptcy court's factual findings bears the burden of proving that those findings are clearly erroneous. In re Rape, 104 B.R. 741, 747 (W.D.N.C. 1989). On the other hand, a bankruptcy court's conclusions of law are reviewed de novo. In re Harford Sands Inc., 372 F.3d 637, 639 (4th Cir. 2004). If an issue presents a mixed question of law and fact, the court applies the clearly erroneous standard to the factual portion of the inquiry and de novo review to legal conclusions derived from those facts. Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 905 (4th Cir. 1996). "[D]ecisions made in the exercise of a bankruptcy court's discretion will not be set aside unless there is plain error or an abuse of discretion." In re Lawless, 79 B.R. 850, 852 (W.D. Mo. 1987).

## Discussion

VABB appeals several facets of the bankruptcy court's November 5, 2014 decision. The court will affirm the bankruptcy court's decision in its entirety for the reasons outlined below.

### I.   *Allowance of Claims 25 and 26*

VABB argues that the bankruptcy court erred in allowing both Claim 25 and Claim 26. The court disagrees.

The Bankruptcy Code provides that a timely filed claim is allowed unless a party in interest objects. 11 U.S.C. § 502(a). If such objection is made, the court must determine the amount and validity of the claim. § 502(b). The United States Court of Appeals for the Fourth Circuit has held that the Bankruptcy Code establishes a burden-shifting framework for proving the amount and

validity of a claim. In re Harford Sands, Inc., 372 F.3d 637, 640 (4th Cir. 2004) (citing Fed. R. Bankr. P. 3001(f)). First, the creditor's filing of a proof of claim constitutes "prima facie evidence of the amount and validity of the claim." In re Harford Sands, Inc., 372 F.3d at 640; In re Hilton, No. 12-61102, 2013 WL 6229100, at *5 (Bankr. W.D. Va. Dec. 2, 2013). Once the creditor meets this burden, the burden then shifts to the debtor to object to the claim with evidence to "rebut the claim's presumptive validity." In re Harford Sands, Inc., 372 F.3d at 640. This evidence must negate at least one fact necessary for the proof of claim's legal sufficiency and "must be sufficient to demonstrate the existence of a *true dispute* and must have probative force equal to the contents of the claim." In re Hilton, 2013 WL 6229100 at *5 (citing In re Falwell, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009)) (emphasis in original). Only in the case where the creditor fails to file the requisite documentation under the first step of the burden-shifting framework is it sufficient for the debtor to object without producing rebuttal evidence in support of its objection. See Falwell, 434 B.R. at 783-84 ("If the proof of claim *is not supported* by the requisite documentation, it is not presumed to be prima facie valid. If the presumption does not arise, the debtor need only to object to the claim pursuant to the applicable rules.") (emphasis in original); see also In re Hilton, 2013 WL 6229100 at *5 ("[E]ven without prima facie validity, the objecting party must have some other legally sufficient grounds for challenging the claim besides just failing to file the documentation."). The requisite documentation, when the claim is based on a writing, is a copy of the writing. Fed. R. Bankr. P. 3001(c); Falwell, 434 B.R. at 783. Finally, if the debtor meets its burden, then the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence. In re Harford Sands, Inc., 372 F.3d at 640.

This ultimate burden is heightened when the creditor is an insider of the company. Id. at 640-41; see Pepper v. Litton, 308 U.S. 295, 306 (1939). When the debtor is a corporation, an "insider" includes a director, officer, or person in control of the corporation. 11 U.S.C. §

7

101(31)(B). An insider's dealings with a bankrupt company are ordinarily subject to strict scrutiny. In re Harford Sands, Inc., 372 F.3d at 641. This strict scrutiny requires that the insider show inherent fairness and good faith of the challenged transaction. Id.

### a. Claim 25

VABB objected to the allowance of Claim 25 on a number of grounds, including that the note was made at a time when VABB's operations were "not sustainable"; the basis of the note was for deferred salary, bonuses, and other amounts allegedly owed to Manuel; Manuel solely maintained the records regarding sums due under the note; parts of the claim were time barred; and the note was not unanimously approved by the board. Bankr. Mem. Op. at 9-10. On appeal, VABB argues that the bankruptcy court failed to apply strict scrutiny to Manuel's claims, as it is undisputed that he is an insider of the company.

Reviewing the bankruptcy court's conclusion of law de novo, the court is constrained to disagree with VABB's assertion that the bankruptcy court erred when it failed to apply strict scrutiny to Manuel's claims. The Fourth Circuit in Harford Sands made it clear that the strict scrutiny burden for insiders applies only after the debtor has rebutted a proof of claim's presumed validity. In that case, applying the burden-shifting framework, the Court first held that the insiders had a presumptively valid claim when they filed their proof of claim. In re Harford Sands, Inc., 372 F.3d at 641. Then, the Court held that the debtor corporation rebutted the presumptively valid claim by offering evidence showing that the amount of the claim was arrived at arbitrarily without any supporting documentation, the insiders were not the rightful owners of the debt, and the claim was time-barred. Id. The Court held that this satisfied the debtor's burden and that the burden shifted back to the insiders to prove the validity of their claim by a preponderance of the evidence. Id. The Court held that the insiders failed to meet their ultimate burden under strict scrutiny review. Id. It is clear that the Court in Harford Sands did not apply strict scrutiny review until after the debtor first

met its burden of introducing evidence to rebut the insiders' presumptively valid claims. Therefore, this court rejects VABB's contention that strict scrutiny review applies at the first step in the burden-shifting framework when the creditor files its proof of claim.

In the instant case, the bankruptcy court found that Manuel timely filed Claim 25, and provided supporting documentation with a promissory note and minutes from the board meetings on January 11, 2012 and on February 15, 2012. Bankr. Mem. Op. at 29. The bankruptcy court concluded that this evidence was sufficient as prima facie evidence of the validity of Claim 25. Id. at 29-30. Thus, the bankruptcy court ruled that the burden shifted to VABB to rebut the presumed validity of the claim. The bankruptcy court held that none of VABB's objections to Claim 25 met this burden. First, the bankruptcy court found that VABB's argument that the note was issued when VABB already had unsustainable operations to be unpersuasive to rebut Claim 25's presumed validity. Specifically, the bankruptcy court found that the note did not "create any new debt but merely served to evidence the validity and amount of a preexisting debt." Id. at 30 (emphasis in original). In the bankruptcy court's view, even without the note, VABB would still owe Manuel his deferred salary and other expenses. Id. Second, the bankruptcy court found that VABB's argument that Claim 25 was not for a debt was unpersuasive to refute the presumed validity of Claim 25. Id. at 30. Specifically, the bankruptcy court found that VABB did not explain why deferred salary, bonuses, and expenses should be treated differently than any other company debts. Id. Also, the bankruptcy court found no evidence for VABB's assertion that Manuel's alleged salary was inflated except for one board member's general belief that "CEO compensation of eight to ten percent gross revenue of a company is 'ridiculous.'" Id. at 31. Third, the bankruptcy court found that VABB's argument that Manuel alone maintained the records that contained the sums that were due to him was insufficient to refute the presumed validity of Claim 25. Id. VABB provided no other evidence that suggests that Manuel's sole control over this information led to any fabricated or inaccurate

9

amounts of what was owed to him. Id. Fourth, the bankruptcy court ruled that the note was not barred by the statute of limitations because the applicable time period is six years following the due date or once acceleration has begun. Id. According to the bankruptcy court, since this note is neither due nor accelerated, the statute of limitations never began to run. Id. Fifth, the bankruptcy court found that the evidence demonstrates that the VABB board unanimously agreed that it owed Manuel the amount claimed and reduced this debt to a note. Id. at 32. The bankruptcy court noted that Larry Chang's testimony was that the board unanimously authorized the creation of the note, and the bankruptcy court found no evidence that contradicted his testimony. Id. Finally, the bankruptcy court held that VABB's argument that Manuel was trying to "create an obligation to him at a time VABB was insolvent and under significant pressure from creditors" to be unpersuasive because Claim 25 merely memorialized preexisting amounts owed to Manuel. Id. Overall, the bankruptcy court found that none of VABB's arguments rebutted the presumed validity of Manuel's Claim 25, and therefore held that VABB did not carry its burden. Id. at 32-33. The court finds no clear error as to any of the bankruptcy court's factual determinations under Claim 25.

### b. *Claim 26*

VABB objected to the allowance of Claim 26 on a number of grounds, including that Manuel solely maintained the records regarding sums due under the note; parts of the claim should have been included in other claims; the claim lacked proper and complete documentation; parts of the claim were time barred; and Manuel controlled VABB at the time sums allegedly due should have been paid. Bankr. Mem. Op. at 11. On appeal, VABB again argues that the bankruptcy court erred by not applying strict scrutiny to Manuel's claims as it is undisputed that he is an insider of the company.

The bankruptcy court used the same Harford Sands burden-shifting framework for Claim 26. Again, for the reasons stated above, this court disagrees with VABB's assertion that the bankruptcy court erred when failed to subject Manuel's proof of claim to strict scrutiny review.

Manuel timely filed Claim 26 for business expenses he incurred, and attached several pages of expense report ledgers with handwritten notations editing the figures on the ledgers. Id. 10-11. VABB raised several objections to Claim 26. The bankruptcy court held all but one to be unpersuasive. First, the bankruptcy court rejected VABB's argument, that Manuel was the only person who maintained the records, inasmuch as VABB did not contend that the amounts were false or fabricated. Id. at 33. Next, the bankruptcy court ruled that VABB's second objection regarding the statute of limitations was without merit because VABB did not identify the applicable statute of limitations or when the claim arose. Id. at 33-34. The bankruptcy court noted, however, that the applicable statute of limitations period would have to have been less than a year to be a defense to liability given that the expenses were incurred in 2012. Id. at 34 n.166. Third, the bankruptcy court held that VABB's argument that Manuel "controlled debtor at the time sums allegedly due should have been paid" to be unpersuasive because VABB did not articulate when the sums should have been paid and did not deny liability for these expenses. Id. at 34. Finally, the bankruptcy court found that the amendment to Claim 26, increasing the total amount to $97,806.47, was untimely. Id. at 37. Neither party appeals this part of the bankruptcy court's decision. Overall, with the exception of the untimeliness objection, the bankruptcy court held that VABB did not meet its burden of rebutting the presumed validity of Claim 26. Id. at 34.

The court finds no clear error in the bankruptcy court's consideration of these factual issues. In the court's view, the bankruptcy court carefully considered the record and reasonably found that VABB offered no evidence to show that Manuel's three claims were invalid. The court believes that the bankruptcy court's conclusions of law were correct in that VABB failed to rebut the presumed

11

validity of Manuel's claims. Therefore, the court finds no reversible error in the bankruptcy court's decision to overrule VABB's objections to Claim 25 and Claim 26. Accordingly, the court upholds the bankruptcy court's decision in allowing both Claim 25 and Claim 26.

## II.   *Equitable Subordination of Claims 24, 25, and 26*

On appeal, VABB also argues that, even if the bankruptcy court properly allowed both Claims 25 and 26, the bankruptcy court nevertheless erred in failing to subordinate all three claims to the claims of other unsecured creditors. The court disagrees.

Bankruptcy courts have authority to equitably subordinate all or part of an allowed claim. 11 U.S.C. § 510(c). However, equitable subordination is an extraordinary remedy, which should be applied sparingly. In re Dornier Aviation (N. America) Inc., No. 02-8199-SSM, 2005 WL 4781236, at *17 (Bankr. E.D. Va. Feb. 8, 2005) aff'd, 453 F.3d 225 (4th Cir. 2006). The test for equitable subordination in the Fourth Circuit is well-established. For a court to equitably subordinate a claim, three elements must be met: "(1) the claimant engaged in inequitable conduct; (2) that conduct injured other creditors; and (3) subordination is consistent with other bankruptcy law." In re S. Textile Knitters, 65 F. App'x 426, 439 (4th Cir. 2003). The burden of showing that equitable subordination is appropriate is on the party requesting it. See In re ASI Reactivation, Inc., 934 F.2d 1315, 1320-1321 (4th Cir, 1991) (finding that appellants did not establish that subordination was warranted at an evidentiary hearing).

### a.   *Inequitable Conduct*

VABB argues that Manuel engaged in inequitable conduct and that the bankruptcy court erred in not subordinating his claims. "Inequitable conduct" includes: "(1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego." In re Fabricators, Inc., 926 F.2d 1458, 1467 (5th Cir. 1991). The standard for showing inequitable conduct is not as high when the creditor is an insider of the

12

company. See In re LandAmerica Fin. Grp., Inc., 470 B.R. 759, 806 (Bankr. E.D. Va. 2012) ("Where the creditor is an insider or fiduciary, however, the standard is not as strict[.]"). In this case, there was no dispute that Manuel was an insider of VABB; however, "simply because a creditor is an insider does not warrant subordination of an otherwise valid claim." In re Dornier Aviation (N. America) Inc., 2005 WL 4781236, at *16 (citing In re ASI Reactivation, Inc., 934 F.2d at 1320-1321). First, the party seeking equitable subordination must show that there was "some unfair conduct, and a degree of culpability, on the part of the insider." Id.; see In re Systems Impact, Inc., 229 B.R. 363, 372 (Bankr. E.D. Va. 1998) ("The initial burden is on a [party seeking equitable subordination] to present 'material evidence of unfair conduct' by an insider; when this is done the insider must prove 'the good faith and fairness of its dealings with the debtor.'") (quoting In re Lemco Gypsum, Inc., 911 F.2d 1553, 1557 (11th Cir. 1990)). To the extent that VABB argues on appeal that Manuel's claims should be subordinated because he failed to show good faith and fair dealing with VABB, the court agrees with the bankruptcy court's finding that VABB failed to present any evidence of unfair conduct to sustain its initial burden. Therefore, the court believes that the bankruptcy court was correct in holding that the burden did not shift to Manuel to show good faith and fair dealing until VABB met its burden, which it failed to do.

In the bankruptcy court proceedings, VABB argued that, applying this lower standard of scrutiny, Manuel engaged in inequitable conduct by breaching his fiduciary duties of loyalty and care. Even assuming that Manuel had a duty of loyalty as a manager of a Virginia limited liability company,[2] the bankruptcy court found that Manuel had not breached that duty based on VABB's specific allegations. Bankr. Mem. Op. at 41. First, the bankruptcy court noted that Manuel's presentation of the note at issue in Claim 25 did not breach his duty to refrain in self-dealing

---

[2] The bankruptcy court found that neither the Virginia Limited Liability Company Act nor common law imposes a duty of loyalty on members or managers of a Virginia limited liability company. Bankr. Mem. Op. at 40. Thus, it held that no such duty existed. Id.

13

because the board unanimously approved it in January 2012, and then did not elect to make any changes to the note when it met in April 2012. Id. Second, the bankruptcy court held that Manuel did not engage in self-dealing when, according to VABB, he set his "excessive salary without board approval." Id. The bankruptcy court found that VABB's operating agreement grants the board authority to establish the compensation of its officers, and VABB presented no evidence that the board disapproved of Manuel's compensation, that Manuel set his salary unilaterally, or that his salary was excessive. Id. at 41-42.

Regarding his duty of care, VABB alleged that Manuel breached his fiduciary duty through multiple instances of inaction, including "his failure to pay personal property taxes, his failure to obtain a proper audit of the company and his failure to even respond to business mail directed to the company." Id. at 42. However, the bankruptcy court found, based on the testimony of several witnesses, that Manuel was not solely responsible for these shortcomings and omissions. Id. at 43. Moreover, applying the standard set forth in the Virginia Limited Liability Company Act, the bankruptcy court concluded that even if Manuel had these responsibilities, VABB did not show that Manuel failed to act in accordance with his "good faith business judgment of the best interests" of VABB, and therefore did not meet its burden of proving a violation of his duty of care. Id. at 44; Va. Code § 13.1-1024.1(c).

On appeal, VABB also argues that VABB was undercapitalized and that Manuel treated VABB as his alter ego, which might permit a finding of inequitable conduct. However, the bankruptcy court found no evidence of undercapitalization at trial. Bankr. Mem. Op. at 39 n.170. The bankruptcy court held that, even if VABB had provided evidence as to the company's undercapitalization, that fact alone would not be sufficient to justify equitable subordination. Id. Stated simply, the court must agree that the bankruptcy court reasonably found that there was no evidence that Manuel treated VABB as an alter ego.

### b. *Injury to Creditors*

Second, VABB argues that Manuel's conduct injured the company and its creditors because he loaned money to the company, deferred his salary, and paid for the company's expenses. The bankruptcy court, however, found no evidence that any of these actions harmed VABB or its creditors. Bankr. Mem. Op. at 45-46. Again, the bankruptcy court noted that VABB failed to meet its burden of rebutting the presumed validity of Manuel's claims. Id. Also, the bankruptcy court found that VABB did not present any additional evidence that creditors were put at an unfair advantage based on Manuel's actions. Id. at 44; see In re Systems Impact Inc., 229 B.R. at 373 (looking at whether the creditor at issue had an unfair advantage over other creditors). To the extent that VABB argues that Manuel's actions caused harm to other creditors because of VABB's "deepening insolvency," the bankruptcy court found that this doctrine was not recognized in Virginia, and was not likely to be recognized. Bankr. Mem. Op. at 44 n.181. In the court's view, the bankruptcy court's decision in this regard is consistent with those of other Virginia courts. See Anderson Gustafsson Advokatbyra, KB v. eScrub Sys. Inc., No. 1:10-cv-632, 2011 WL 677053, at *4 (E.D. Va. Feb. 15, 2011) ("[I]t is unlikely Virginia would recognize a claim for 'deepening insolvency'"); see also In re James River Coal Co., 360 B.R. 139, 179 (Bankr. E.D. Va. 2007) (finding that adopting the theory of deepening insolvency would "fundamentally transform Virginia law[.]").

### c. *Subordination is Consistent with Bankruptcy Law*

Finally, VABB argues that subordination is consistent with sound principles of bankruptcy law because it is an equitable remedy that is authorized to "prevent courses of conduct otherwise fraudulent, abusive or unfair." In the Matter of Multiponics, Inc., 622 F.2d 709, 721 (5th Cir. 1980). However, as noted above, the bankruptcy court found that VABB did not provide any evidence that Manuel's actions constituted inequitable conduct, and therefore certainly did not find fraudulent,

15

abusive, or unfair conduct. Bankr. Mem. Op. at 47. Although the bankruptcy court did not explicitly rule on this element, it is clear that subordination would not be appropriate without a finding of fraudulent, abusive, or unfair conduct by the person whose interest is to be subordinated.

Most importantly, the goal of equitable subordination is to remedy some inequity or unfairness perpetrated by one creditor against others. In re Dornier Aviation (N. Am.), Inc., 453 F.3d at 232. Again, this is an extraordinary remedy to be applied sparingly as it creates uncertainty and unpredictability for creditors. Nat. Emergency Servs. v. Williams, 371 B.R. 166, 170 (W.D. Va. 2007). The court believes that the court below was mindful of these precepts. In the court's view, the bankruptcy court carefully considered the record and the testimony at trial when it found that VABB did not present sufficient evidence to show the elements necessary for equitable subordination. The court believes that the bankruptcy court correctly held that VABB did not sustain its burden of showing that equitable subordination was warranted for Manuel's three claims. Moreover, the court believes that the bankruptcy court's decision is consistent with the purpose of this equitable remedy. Accordingly, the court upholds the bankruptcy court's decision that equitable subordination is not appropriate in this case.

### *III.  Rechacterization of Claims 24, 25, and 26*

Finally, VABB argues that the bankruptcy court erred in not recharacterizing Manuel's three claims as equity. Again, the court disagrees.

The Fourth Circuit has recognized that the bankruptcy court has authority to recharacterize a debt claim as equity, and sets out eleven factors in order to determine whether recharacterization is appropriate:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security,

> if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

In re Dornier Aviation (N. Am.), Inc., 453 F.3d 225, 233 (4th Cir. 2006) (citing AutoStyle Plastics, Inc., 269 F.3d 726, 749-50 (6th Cir. 2001)). The Fourth Circuit noted that "[n]one of these factors is dispositive and their significance may vary depending upon the circumstances." Id. at 234. In addition, "a claimant's insider status and a debtor's undercapitalization alone will normally be insufficient to support the recharacterization of a claim" because in many cases, an insider may be the "only party willing to make a loan to a struggling business" and recharacterization should not be used to "discourage good-faith loans." Id.

In this case, the court believes that the bankruptcy court considered all of the above factors in analyzing the transactions between Manuel and VABB at issue in Claims 24, 25, and 26. The bankruptcy court noted that most of the factors weighed against recharacterization. Bankr. Mem. Op. at 50-53. It found that the only factor that weighed in favor of recharacterization was the absence of a sinking fund to provide repayments because the creation of a sinking fund tends to show that an advance is a loan. Id. However, in the court's view, the bankruptcy court properly determined that the remaining factors were either neutral or weighed against recharacterization.

On appeal, VABB argues that the bankruptcy court erred because it did not apply rigorous scrutiny to Claim 25. Specifically, VABB argues that Claim 25 should have been recharacterized as equity since the transaction underlying this claim was not an arm's length transaction. As noted above, VABB did not meet its burden of rebutting the presumed validity of Claim 25, and therefore rigorous scrutiny of Claim 25 is not appropriate. More importantly, the court does not find this argument to be persuasive because the eleven factors themselves "all speak to whether the

17

transaction" has the characteristics of arm's length negotiation. In re Dornier Aviation (N. Am.), Inc., 453 F.3d at 234.

Next, VABB argues that the eleven factors do indeed weigh in favor of recharacterization. VABB contends that the bankruptcy court did not consider that VABB could not have obtained financing from other financial institutions and that Manuel agreed to be subordinated to VABB's other creditors. These arguments are unpersuasive. First, the Court in Dornier Aviation noted that insiders may be the only parties willing to make a loan to a struggling business. 453 F.3d at 234. Therefore, VABB's inability to obtain a loan at a financial institution with the same characteristics as Manuel's loans alone should not be dispositive. Second, the facts do not suggest that Manuel agreed to subordinate his claims to other creditors. Manuel's decision to forego a salary and reimbursement for expenses was before his debt to the company was ever memorialized into a note. In fact, his decision to forego immediate payment for these debts led to the need to create these notes in the first place. Unlike the facts in Dornier Aviation, once Manuel did have his debts memorialized as promissory notes, nothing in the record suggests that he understood he would be paid only after VABB satisfied its other creditors. Even if the court were to agree with VABB that the bankruptcy court should have considered these aspects of the record as evidence in favor of recharacterizing Manuel's claims as equity, these shortcomings alone do not warrant a finding that the bankruptcy court's decision is a "clear error" as no factor alone is dispositive.

Although recharacterization and equitable subordination reach similar results with respect to the priority of payments following a bankruptcy, they "address distinct concerns" and "serve[] a different purpose." In re Dornier Aviation (N. Am.), Inc., 453 F.3d at 232. Specifically, recharacterization focuses on the substance of the transaction to determine whether a debt actually exists. In re Franklin Equip. Co., 416 B.R. 483, 508-09 (E.D. Va. 2009). When deciding to recharacterize, the court is "not required to accept the label of 'debt' or 'equity'" and must look

18

"into the actual nature of the transaction to determine how best to characterize it." In re Cold Harbor Assocs., 204 B.R. 904, 915 (Bankr. E.D. Va. 1997). Again, the court believes that the bankruptcy court's decision is consistent with the goal of this doctrine in achieving priority for true creditors against equity investors.

In sum, the court believes that the bankruptcy court carefully considered the record and the testimony at trial when it analyzed the Dornier Aviation factors. The court concludes that the bankruptcy court correctly applied the Dornier Aviation test in determining not to recharacterize Manuel's claims as equity. Accordingly, the court affirms the bankruptcy court's decision declining to recharacterize Manuel's claims as equity.

## Conclusion

For the reasons stated, the court will affirm the bankruptcy court's decision in its entirety, finding no reversible error in its decision.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 15th day of September, 2015.

*/s/ Glen E. Conrad*
Chief United States District Judge

19
Case 3:14-cv-00052-GEC   Document 22   Filed 09/15/15   Page 19 of 19   Pageid#: 3376